1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                FOR THE EASTERN DISTRICT OF CALIFORNIA
10
11    G. DANIEL WALKER,                    No.  2:21-cv-0364 TLN AC P
12              Plaintiff,
13         v.                              ORDER AND FINDINGS &
                                           RECOMMENDATIONS
14    SECRETARY OF CORRECTIONS, et al.,
15              Defendants.
16
17         Plaintiff is a state prisoner proceeding pro se and seeks relief pursuant to Title II of the
18    Americans with Disabilities Act (ADA), 42 U.S.C. § 2132; and Section 504 of the Rehabilitation
19    Act of 1973 (RA), 29 U.S.C. § 794.
20    I.    Procedural History
21         This case was originally filed in state court and was subsequently removed to this court.
22    ECF No. 1.  On screening, the court determined that plaintiff had stated claims under the ADA
23    and RA against the Warden of California Health Care Facility (CHCF) in her official capacity.
24    ECF No. 6.  All other claims and defendants were ultimately dismissed.  ECF No. 8.  After the
25    close of discovery, defendant moved for summary judgment (ECF No. 22) and plaintiff moved to
26    disqualify the Attorney General's Office from representing defendant (ECF No. 23).
27    II.   Motion to Disqualify
28         Plaintiff has moved to disqualify the Attorney General's Office from representing

defendant, on the grounds that a conflict exists between the Attorney General's duty to enforce various state laws enacted to protect the rights of disabled persons and tis defense of the California Department of Corrections and Rehabilitation (CDCR) and its staff who are accused of violating those laws.  ECF No. 23.  Defendant opposes the motion arguing that plaintiff does not have standing to seek counsel's disqualification because he is not a former client, there is no conflict, the motion is tactically motivated, and disqualification would be unduly burdensome. ECF No. 30.

"As a general rule, courts do not disqualify an attorney on the grounds of conflict of interest unless the former client moves for disqualification." Kasza v. Browner, 133 F.3d 1159, 1171 (9th Cir. 1998) (quoting United States v. Rogers, 9 F.3d 1025, 1031 (2d Cir. 1993)).  In this case, plaintiff is not a former client of the Attorney General's Office or the attorney handling the case and instead makes only a general allegation of conflict, which does not establish standing to seek defense counsel's disqualification.

Moreover, the California Attorney General

> "has the power to file any civil action or proceeding directly involving the rights and interests of the state, or which he deems necessary for the enforcement of the laws of the state, the preservation of order, and the protection of public rights and interest."  Conversely, he has the duty to defend all cases in which the state or one of its officers is a party.  In the course of discharging this duty he is often called upon to make legal determinations both in his capacity as a representative of the public interest and as statutory counsel for the state or one of its agencies or officers.  In the great majority of such cases no conflict will result because in representing the interest of his "client" the Attorney General will take a position consistent with what he deems to be in the public interest.  In the exceptional case the Attorney General, recognizing that his paramount duty to represent the public interest cannot be discharged without conflict, may consent to the employment of special counsel by a state agency or officer.  However, unless the Attorney General asserts the existence of such a conflict, it must be concluded that the actions and determinations of the Attorney General in such a lawsuit are made *both* as a representative of the public interest *and* as counsel for the state agency or officer.

D'Amico v. Bd. of Med. Exam'rs, 11 Cal. 3d 1, 14-15 (1974) (internal citations omitted).  As defendant points out, plaintiff's state law claims have been dismissed and this case proceeds on federal claims only, meaning there is no conflict in the Attorney General's Office providing

1   representation.  Even if plaintiff's state law claims had not been dismissed, the court would defer

2   to the Attorney General's determination regarding the existence of a conflict in representing

3   defendant and representing the public interest.

4          For these reasons, plaintiff's motion to disqualify the Attorney General's Office will be

5   denied.

6      III.      Plaintiff's Allegations

7          The complaint alleges that plaintiff is disabled and entitled to confidential legal

8   communications and access to legal materials but has been excluded from these benefits because

9   of his disabilities.  ECF No. 1 at 5-15.  He also alleges that he has been denied access to blind

10  accessible devices which he requires to access the courts.  Id. at 12, 14.  Plaintiff is legally blind,

11  has profound hearing loss, and has severe mobility restrictions that require a full-time wheelchair

12  accommodation.  Id. at 8.

13         On January 17, 2020, plaintiff arrived at CHCF with fifteen boxes of legal materials and

14  personal items.  Id. at 9.  Twelve of the boxes with legal materials and supplies, including case

15  files for pending cases, were seized, with one officer saying plaintiff did not need them because

16  he was going blind.  Id.  Plaintiff's requests to access the files were ignored.  Id. at 10.  He also

17  alleges that he has been denied the ability to keep his personal legal materials in his assigned cell,

18  in part because of his vision.  Id. at 14.

19         Upon plaintiff's transfer to CHCF and continuing through the filing of the complaint,

20  prison staff have denied plaintiff access to a blind equipped scanner, computer, large screen

21  monitor, and printer, which he needs to access the courts.  Id. at 12.  He has been denied the use

22  of an accessible computer even though non-disabled inmates are actively encouraged to use the

23  computers in the library.  Id. at 14.  Plaintiff has also requested and been denied a braille slate and

24  stylus for court deadlines, "a Perkins Brailler, HIMS Bluetooth USB Brailler terminal with

25  Window-Eye, NVDA, Voice-Over, and Brailleback electronic court filing."  Id. at 13.

26         Beginning March 11, 2020, the prison law library closed due to COVID-19 restrictions,

27  and access to the paging system became limited.  Id. at 10.  Plaintiff had over twenty paging

28  requests denied between April and October 2020, while non-disabled inmates have been granted

3

1    unlimited paging services and inter-library loan materials. <u>Id.</u> at 10-11, 14. He was also advised

2    that certain materials could be accessed only in the library, which was closed; that he was limited

3    to two cases per week; that there were no exceptions for disabled inmates; and that he should use

4    LexisNexis and JAWS text-to-speech. <u>Id.</u> at 11. When plaintiff requested a list of available

5    braille law books his requests were either ignored or he was told to fill out an application to the

6    California State Library or that the law library provided JAWS instead of braille books. <u>Id.</u> at 12.

7    However, because plaintiff is legally blind and suffers from profound hearing loss, he is unable to

8    see the LexisNexis screen or hear the JAWS text-to-speech and he requires hard copies of cases

9    in order to enlarge them to 400-600%. <u>Id.</u> at 10. Between May and June 2020, plaintiff

10   submitted eighteen document delivery and reference request forms for materials from the

11   California State Library, but they were rejected by prison staff. <u>Id.</u> at 11. The requests all sought

12   ADA and RA reference materials. <u>Id.</u> at 11-12.

13          Finally, plaintiff has been denied the ability to communicate confidentially with the

14   "courts, attorneys, elected officials, and investigative agencies" because the Merlin magnification

15   and text-to-speech reader in the law library is in an open space where other individuals can easily

16   see and hear any confidential document placed in the device. <u>Id.</u> at 13. He has also been denied a

17   handheld video magnifier, which would allow him to read documents in his cell and "enjoy 24/7

18   privacy." <u>Id.</u> at 14.

19          IV.    <u>Motion for Summary Judgment</u>

20                 A.    <u>Defendant's Arguments</u>

21          Defendant argues that plaintiff's claims fail because his surviving claims are for injunctive

22   relief and those claims are barred by the <u>Armstrong</u>[1] class action, of which plaintiff is a member.

23   ECF No. 22-1 at 15-16. Defendant also argues that, regardless of plaintiff's class membership,

24   his claims for injunctive relief should be denied because he is not entitled to such relief. <u>Id.</u> at 24-

25   26. Finally, defendant argues that plaintiff's claims fail because he has not been discriminated

26   against based on his disabilities; that the things he alleges were denied are not a service, program,

27

28   [1]  <u>Armstrong v. Newsom</u>, No. 94-cv-2307 CW (N.D. Cal.).

4

1  or activity; and that he has not shown he suffered any injury due to lack of access to legal

2  materials or the law library.  Id. at 17-24.

3             B.      Plaintiff's Response

4        At the outset, the court notes that plaintiff has failed to comply with Federal Rule of Civil

5  Procedure 56(c)(1)(A), which requires that "[a] party asserting that a fact . . . is genuinely

6  disputed must support the assertion by . . . citing to particular parts of materials in the record."

7  Plaintiff has also failed to file a separate document in response to defendants' statement of

8  undisputed facts that identifies which facts are admitted and which are disputed, as required by

9  Local Rule 260(b).

10        "Pro se litigants must follow the same rules of procedure that govern other litigants."

11  King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) (citation omitted), overruled on other grounds,

12  Lacey v. Maricopa County, 693 F.3d 896, 928 (9th Cir. 2012) (en banc).  However, it is well-

13  established that district courts are to "construe liberally motion papers and pleadings filed by *pro*

14  *se* inmates and should avoid applying summary judgment rules strictly."  Thomas v. Ponder, 611

15  F.3d 1144, 1150 (9th Cir. 2010).  The unrepresented prisoner's choice to proceed without counsel

16  "is less than voluntary" and they are subject to "the handicaps . . . detention necessarily imposes

17  upon a litigant," such as "limited access to legal materials" as well as "sources of proof."

18  Jacobsen v. Filler, 790 F.2d 1362, 1364 n.4 (9th Cir. 1986) (alteration in original) (citations and

19  internal quotation marks omitted).  Inmate litigants, therefore, should not be held to a standard of

20  "strict literalness" with respect to the requirements of the summary judgment rule.  Id. (citation

21  omitted).

22        Accordingly, the court considers the record before it in its entirety despite plaintiff's

23  failure to be in strict compliance with the applicable rules.  However, only those assertions in the

24  opposition which have evidentiary support in the record will be considered.

25        Although plaintiff has filed disputed facts, rather than address defendant's statement of

26  facts he instead identifies facts he asserts are disputed based on defendant's answer to the

27  complaint.  ECF No. 24.  Plaintiff's declaration and opposition also largely fail to address

28  defendant's motion for summary judgment and instead argue that he has been prevented from

defending this case due to defendant's interference.  ECF Nos. 25, 26.  Specifically, he alleges that prison staff prevented him from meeting with opposing counsel, lost or stole his motion for summary judgment, discontinued the law library electronic delivery (LLED) device in favor of tablets that do not provide sufficient magnification, refused to provide a video magnifier, destroyed his case files, and failed to provide him with access to appropriate accommodations to allow him to complete court filings.  ECF No. 25 at 1-8.

C.    Legal Standards for Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact."  In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case."  Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B).  Indeed, summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.  In such a circumstance, summary judgment should "be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule

1    56(c), is satisfied." Id.

2         If the moving party meets its initial responsibility, the burden then shifts to the opposing

3    party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec.

4    Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the

5    existence of this factual dispute, the opposing party may not rely upon the allegations or denials

6    of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or

7    admissible discovery material, in support of its contention that the dispute exists. See Fed. R.

8    Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a

9    fact "that might affect the outcome of the suit under the governing law," and that the dispute is

10    genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving

11    party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

12         In the endeavor to establish the existence of a factual dispute, the opposing party need not

13    establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual

14    dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

15    trial." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987)

16    (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968). Thus, the

17    "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see

18    whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal

19    quotation marks omitted).

20         "In evaluating the evidence to determine whether there is a genuine issue of fact, [the

21    court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls

22    v. Cent. Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted). It is the

23    opposing party's obligation to produce a factual predicate from which the inference may be

24    drawn. See Richards v. Neilsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to

25    demonstrate a genuine issue, the opposing party "must do more than simply show that there is

26    some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations

27    omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the

28    non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391

7

1  U.S. at 289).

2       Defendant simultaneously served plaintiff with notice of the requirements for opposing a

3  motion pursuant to Rule 56 of the Federal Rules of Civil Procedure along with their motion for

4  summary judgment.  ECF No. 22-4; see Klingele v. Eikenberry, 849 F.2d 409, 411 (9th Cir.

5  1988) (pro se prisoners must be provided with notice of the requirements for summary judgment);

6  Rand v. Rowland, 154 F.3d 952, 960 (9th Cir. 1998) (en banc) (movant may provide notice).

7       D.    ADA and RA Legal Standards

8       Title II of the ADA and the RA apply to inmates within state prisons.  Penn. Dept. of

9  Corr. v. Yeskey, 524 U.S. 206, 213 (1998).  To state a claim for violation of Title II of the ADA,

10  a plaintiff must allege four elements:

11          (1) [H]e "is an individual with a disability;" (2) he "is otherwise
12          qualified to participate in or receive the benefit of some public entity's services, programs, or activities;" (3) he "was either
13          excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity;" and (4) "such exclusion,
14          denial of benefits, or discrimination was by reason of [his] disability."
15

16  McGary v. City of Portland, 386 F.3d 1259, 1265 (9th Cir. 2004) (second alteration in original)

17  (quoting Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002) (per curiam)).  While the RA has

18  the additional requirement that the program or activity receive federal funds, 29 U.S.C. § 794(b),

19  "[t]here is no significant difference in analysis of the rights and obligations created by the ADA

20  and the Rehabilitation Act.  Thus, courts have applied the same analysis to claims brought under

21  both statutes," Zukle v. Regents of the Univ. of Cal., 166 F.3d 1041, 1045 n.11 (9th Cir. 1999)

22  (internal citations omitted).

23       E.    Undisputed Material Facts

24          i.    Failure to Comply with Local Rule 260(b)

25       As noted above, plaintiff has failed to file a separate document disputing defendant's

26  statement of undisputed facts, as required by Local Rule 260(b) and instead identified portions of

27  the answer to the complaint that he believes create disputed facts.  The court further notes that

28  plaintiff's complaint is not verified (ECF No. 1 at 5-15) and the sworn declaration accompanying

8

1    his opposition to the motion for summary judgment (ECF No. 25) addresses only some of the

2    claims raised in the complaint.  Therefore, in determining whether a fact is in dispute, the court

3    will consider contrary facts set forth in the complaint only to the extent that they are consistent

4    with plaintiff's deposition transcript and declaration, contain information about which plaintiff

5    has personal knowledge and is competent to testify, and could be presented by plaintiff in an

6    admissible form.

7                                    ii.    Plaintiff

8              Plaintiff is, and was at all times relevant to the complaint, an inmate incarcerated by the

9    CDCR with mobility, visual, and hearing disabilities.  DSUF (ECF No. 22-2 at 2-10) ¶¶ 1-2; ECF

10   No. 1 at 7-8.  As a result of these disabilities, plaintiff has been a member of the Armstrong class

11   since at least October 14, 2019.  DSUF ¶ 2.

12                                   iii.    Legal Property

13             On January 17, 2020, plaintiff arrived at CHCF with fifteen boxes of legal materials, law

14   books, personal items, and a typewriter.  DSUF ¶ 31; PL's Depo. 34:7-13 (ECF No. 22-2 at 23).

15   On January 24, 2020, twelve of the boxes were taken away.  DSUF ¶ 31; PL's Depo. 36:11-17

16   (ECF No. 22-2 at 25).  The three boxes plaintiff was permitted to keep contained multiple legal

17   books and 300 file folders of letters and legal references.  DSUF ¶ 39; PL's Depo. 39:6-21 (ECF

18   No. 22-2 at 26).  CDCR regulations provide that prisoners are allowed to keep one cubic foot of

19   legal materials in their cells.  DSUF ¶ 32; PL's Depo. 35-22-36:4 (ECF No. 22-2 at 24-25).  As a

20   result, plaintiff was informed that his excess legal materials would be boxed and stored and that

21   he could request to exchange the materials in his cell for the stored materials as needed.  DSUF

22   ¶¶ 34-35.

23             Defendant asserts that plaintiff subsequently sent in requests to exchange materials and

24   none of those requests were denied, though some may have been delayed due to staffing

25   shortages, and that his legal property issues were addressed according to the same procedures

26   applicable to other inmates.  DSUF ¶¶ 37-38.  Plaintiff alleges that his requests were ignored, he

27   did not see the boxes again until November 2022, that a court order in another case allowed him

28   to possess all his property in his cell, and that he was told by prison staff that he did not need the

                                                   9

1    boxes because he was blind.  ECF No. 1 at 10; PL's Depo. 35:2-14, 36:6-10, 48:19-20 (ECF No.

2    22-2 at 24-25, 34).  At his deposition, plaintiff testified that he did not believe his property was

3    seized because of his disability, but rather because of his litigation activities.  PL's Depo. 46:1-8

4    (ECF No. 22-2 at 32).

5            Between November 2022 and March 2023, all inmates were required to dispose of fifty

6    percent or more of their property stored in the property room.  DSUF ¶ 42; PL's Depo. 40:22-

7    41:22 (ECF No. 22-2 at 27-28).  Plaintiff did not object to the process and understood that it was

8    due to the need for storage space at the prison.  DSUF ¶ 43; PL's Depo. 42:21-43:3 (ECF No. 22-

9    2 at 29-30).  At the time, plaintiff kept more current material in his cell and the documents in

10   storage were largely from dismissed cases that plaintiff no longer needed.[2]  PL's Depo. 41:23-

11   42:20 (ECF No. 22-2 at 28-29).  When plaintiff was given access to the boxes to begin disposing

12   of excess property, he found only eight boxes of legal property.  PL's Depo. 35:5-14, 40:22-41:1,

13   43:8-13 (ECF No. 22-2 at 24, 27-28, 30).  Plaintiff has no knowledge as to whether any of the

14   original twelve boxes were destroyed by prison staff.  DSUF ¶ 44; PL's Depo. 45:6-10 (ECF No.

15   22-2 at 31).

16                     iv.    Access to the Law Library

17           Between March 18[3] and August 24, 2020, the law library was closed to all inmates due to

18   the COVID-19 pandemic.  DSUF ¶ 24; PL's Depo. 72:10-20 (ECF No. 22-2 at 45).  Outside of

19   that period, general library user (GLU) inmates could physically access the library, including the

20   electronic equipment for visually impaired inmates, during the hours scheduled for their housing

21   unit or building without a ducat.  DSUF ¶ 24.  Ducats were only provided to priority legal user

22   (PLU) inmates.  Id.  Defendant asserts that plaintiff was granted PLU status on several occasions

23   during 2020, including May 12, 2020, and that PLU status was only denied when his application

24   _____

25   [2]  Defendant asserts that plaintiff clarified that at the time the boxes were initially taken to storage
     the documents in them were from cases that had been dismissed.  DSUF ¶ 41.  However,
26   plaintiff's deposition testimony indicates that the case materials stored in the boxes were active at
     the time they were initially taken but were dismissed by the time he was required to reduce his
27   property over two years later.  PL's Depo. 40:12-16; 41:23-42:7 (ECF No. 22-2 at 27-29).
     [3]  The complaint alleges that the law library shut down on March 11, 2020.  ECF No. 1 at 10.
28   However, the one-week difference in date is not material.

1    was incomplete or he otherwise failed to comply with the regulations, which applied to all

2    prisoners.  DSUF ¶ 29.  Plaintiff identifies three occasions on which he was denied PLU status,

3    each for a different case.  ECF No. 1 at 11.  He also asserts that despite signing up, he has never

4    received a ducat for the law library and that the one time he attempted to go to the law library he

5    was told to leave because he was not on the ducat list.  PL's Depo. 68:13-69:25 (ECF No. 22-2 at

6    42-43).

7                        v.    Access to Legal Research Materials

8          When the law library was closed due to COVID-19, paging services were available to all

9    inmates.  DSUF ¶ 25.  The service allowed inmates to submit a request for legal materials

10   maintained in the library and copies would be provided.  Id.  Plaintiff submitted multiple requests

11   for paging services which were filled, except when they violated library policies and procedures.

12   Id.  Due to workforce constraints, the library adopted a "two cases per week" policy, which

13   limited the paging service provided and was applied to all inmates.  DSUF ¶ 26; PL's Depo.

14   79:17-23, 80:6-9 (ECF No. 22-2 at 49-50).  No inmate was allowed unfettered paging services.

15   DSUF ¶ 25.

16         Plaintiff's requests for the Daily Journal Daily Appellate Reports were not approved

17   because the documents were designated for library use only and the policy applied to all inmates.

18   DSUF ¶ 27.  Some of plaintiff's Inter-Library Loan requests were denied because the requests did

19   not meet the criteria of California Code of Regulations, title 15, § 3124, concerning the content of

20   law libraries, while others were denied because the forms requested were available in the Law

21   Library Electronic Delivery System (LLEDS) computer.  DSUF ¶ 28.  Plaintiff's requests for a

22   list of available braille law books were also not denied or ignored since CHCF did not maintain a

23   list of available braille law books except for Board of Parole Hearings forms.  DSUF ¶ 30.

24         Plaintiff had access to an LLEDS device for the vision impaired in his cellhouse from his

25   arrival at CHCF until February 11, 2024, when it was removed because it malfunctioned.  ECF

26   No. 25 at 3-4, 39-40.  Prior to its removal, plaintiff used the LLEDS, which functioned

27   satisfactorily.  Id. at 3.  The device was replaced on March 21, 2024.  ECF No. 28 at 6.

28   ////

1          vi.     Access to Accommodations

2          The CDCR does not provide an established program, service, or activity for inmates to

3    conduct confidential work in their cells.  DSUF ¶ 15.  At CHCF, prisoners are permitted to work

4    on their legal cases and other confidential matters in their cell, as well as in the law library,

5    exercise room, dayroom, or other locations they may choose, subject to other policies and

6    procedures required for the safety and security of the institution.  Id.  The CDCR provides

7    accommodations for disabled inmates through the Reasonable Accommodation Panel which may

8    be used for multiple purposes, including legal work, and accommodations include specialty

9    equipment at the two law libraries.  DSUF ¶ 16.  The equipment includes a Merlin video

10   magnifier, which also has text-to-speech capabilities; LLEDS computers equipped with Job

11   Access with Speech (JAWS) software, which provides text-to-speech conversion; a designated

12   ADA computer with a large print keyboard and Microsoft Word software, which has the option to

13   increase the font size; and LLEDS computers which can increase the size of font up to 400 times.

14   Id.

15          The Merlin text-to-speech converter, LLEDS computers with JAWS software,

16   touchscreen LLEDS computers, and ADA computers are all equipped with headphone jacks so

17   that users can listen with headphones, enhancing the ability of the users to hear and providing

18   some degree of privacy.  ECF No. 22-2 at 92 (Chaudhry Decl. ¶ 2).  The specialty equipment in

19   the law libraries is large and not easily moved, and if it was moved to a different location, such as

20   plaintiff's cell or housing unit, it would not be available for use by other inmates in the law

21   libraries.  DSUF ¶ 20.  There is a room connected to the law libraries, but it is not feasible to

22   allow for private use of the specialty equipment in that room because the room is used by various

23   staff members, including staff completing notary signings with inmates.  DSUF ¶ 21.  Allowing

24   plaintiff to use the equipment in that room by himself would prevent its use for other purposes

25   and plaintiff, like any other inmate, would not be allowed to work in the room without a

26   correctional officer present due to safety and security reasons.  Id.

27          Plaintiff has never been to the law library at CHCF to utilize the equipment.  DSUF ¶ 17;

28   PL's Depo. 67:5-6 (ECF No. 22-2 at 41).  He asserts that he has made requests to access the

1    equipment at the law libraries but has never been given a ducat to go and he has never made the

2    list of inmates allowed to attend the library.  DSUF ¶ 18; PL's Depo. 68:1-69:4, 71:16-72:5 (ECF

3    No. 22-2 at 42-45).  He does not know if his inability to attend the library was due to his

4    disability.  DSUF ¶ 19; PL's Depo. 72:5-9 (ECF No. 22-2 at 45).  Plaintiff asserts that he was

5    denied a braille slate and stylus to prepare a court pleading related to a different matter in this

6    court.  PL's Decl. 111:2-13 (ECF No. 22-2 at 68).  He later learned that this court does not accept

7    braille pleadings.  Id.

8         Plaintiff prepared the complaint in this matter by telling another inmate what the

9    document should contain, after which the inmate typed the document and read it back to plaintiff.

10   DSUF ¶ 8; PL's Depo. 21:22-23:4 (ECF No. 22-2 at 16-18).  While housed at CHCF, plaintiff has

11   used this same process to file documents with the courts, administrative agencies, and for

12   anything he needed typed, and has done so in various locations, including his cell, the day room,

13   and a utility room.  DSUF ¶¶ 9-10; PL's Depo. 23:6-21 (ECF No. 22-2 at 18).  Plaintiff has no

14   evidence that he was denied access to computers at CHCF because of his disability.  DSUF ¶ 57;

15   PL's Depo. 104:13-20 (ECF No. 22-2 at 67).

16        It is not feasible to allow plaintiff to use computers designated for use by CHCF staff,

17   even when those computers are not being used.  DSUF ¶ 22.  Inmates are not allowed to access

18   staff computers in order to prevent unauthorized access to confidential information, including

19   medical information of other inmates, and inmates are not allowed to access the internet.  Id.  Any

20   staff allowing prisoners to use staff computers would be engaging in unauthorized conduct that

21   would subject them to discipline.  Id.

22                    vii.    Additional Accommodations and Auxiliary Devices

23        At his deposition on January 5, 2024, plaintiff did not require any accommodations and

24   was able to hear the questions asked without hearing aids, though he indicated that he had hearing

25   aids on order.  DSUF ¶¶ 3-4; PL's Depo. 8:2-12, 13:2-13 (ECF No. 22-2 at 13, 15).  Plaintiff has

26   been provided a series of magnifiers (3x, 4x, 7x, 14x, and 30x) which had all "started to fail" by

27   the time of his deposition.  DSUF ¶ 5; PL's Depo. 9:9-15 (ECF No. 22-2 at 14).  He further

28   testified that there was a video magnifier on order that had been approved on July 7, 2023, but

                                        13

that there was a dispute over the cost even though funds had been approved on July 28, 2023.

DSUF ¶ 6; PL's Depo. 9:15-25 (ECF No. 22-2 at 14).  On February 28, 2024, the 20x video

magnifier was delivered to plaintiff.  DSUF ¶ 6.  The following day, plaintiff was trained on a

Zoomax Snow 12 portable magnifier which enlarges documents 2.5-19x and provides text-to-

speech conversion.  DSUF ¶ 7.  These magnifiers can be checked out for a twenty-four-hour

period and can be used in conjunction with other electronic devices, including the tablets

provided to inmates which contain LEXIS/Nexis legal research capability.  Id.  It can also connect

to other computers to enlarge the print of documents shown on the computer monitor and transfer

computer files.  Id.

On January 31, 2024, the CDCR issued a memorandum acknowledging an obligation to

provide incarcerated persons with equal access to programs, services, and activities as required by

Federal law and the Armstrong Remedial Plan.  DSUF ¶ 60.  It also acknowledged that it is

important for an incarcerated person with a vision impairment to have access to reading and

writing accommodations in a format that accommodates the disability and sets out a process for

evaluating an inmate's needs and providing the recommended assistive items.  Id.; ECF No. 22-2

at 180-83.

F.    Discussion

i.    Alleged Interference

Plaintiff's opposition to defendant's motion for summary judgment largely focuses on his

claim that he has been prevented from litigating this case.  ECF Nos. 25, 26.  First, plaintiff

asserts that he was prevented from attending a legal call with defense counsel on August 17,

2023.  ECF No. 25 at 1-2.  However, even assuming this happened in the manner plaintiff

describes, it is unclear how it prevented him from litigating the case or responding to defendant's

motion for summary judgment.  He next claims that prison staff interfered with his attempt to

make copies of his motion for summary judgment at the end of January 2024 (id. at 2-3), and

while concerning if staff deliberately tampered with plaintiff's copy request, he does not allege

any other incidents or issues with his ability to obtain copies or that he was prevented from filing

a request for additional time to file his motion.

14

1      Plaintiff also states that on February 11, 2024, the LLEDS device in his cell house was

2   removed after it began malfunctioning, which prevented him from being able to conduct legal

3   research, and that he cannot see well enough to use his tablet for legal research.  ECF No. 25 at 3-

4   4, 7, 39-40.  However, in her reply, defendant asserts that the LLEDS device was replaced by

5   March 21, 2024, prior to filing of the motion for summary judgment, and at all times there were

6   additional LLEDS computers in the law libraries.  ECF No. 28 at 14.  Moreover, while plaintiff

7   alleges past difficulties obtaining the 20x video magnifier ordered by his primary care physician,

8   which would assist him in using the tablet (ECF No. 25 at 4), he does not dispute defendant's

9   evidence, presented in the motion for summary judgment and affirmed in the reply, that there are

10  now twelve Zoomax Snow 12 magnifiers which can be checked out for twenty-four-hour periods,

11  provide text-to-speech conversion, and can be used to magnify the tablet display (DSUF ¶ 7; ECF

12  No. 28 at 14).  Plaintiff also does not dispute that the 20x video magnifier that was ordered for

13  him was delivered to him on February 28, 2024.  DSUF ¶ 6.

14      Plaintiff's opposition next reiterates his claims regarding the seizure of his legal materials

15  when he arrived at CHCF and asserts that in January 2023 he was advised that all of his inactive

16  case files, including files for this case, were going to be destroyed and were destroyed.  ECF No.

17  25 at 5.  However, this directly contradicts plaintiff's deposition testimony that between

18  November 2022 and March 2023 he was required to dispose of fifty percent or more of his stored

19  legal materials, that he understood the order and was amenable to it, that he was responsible for

20  sorting through the materials to decide what to dispose of, and that he no longer needed the

21  contents which were chosen for disposal.  PL's Depo. 40:24-42:20 (ECF No. 22-2 at 27-29).  He

22  also testified that to his knowledge, none of the twelve boxes that were originally seized when he

23  arrived at CHCF were destroyed by staff at the prison.  Id. 45:6-10 (ECF No. 22-2 at 31).

24      Plaintiff also alleges that since his transfer to CHCF through the filing of his declaration,

25  he has not been provided access to a blind compatible computer, scanner, and laser printer to

26  prepare legal pleadings.  ECF No. 25 5-6.  He states that, while he has not witnessed it himself, he

27  has been informed by another inmate that the blind compatible computer is reserved for non-

28  impaired inmates and has not been used by a vision impaired person in over seven months.  Id. at

6.  But plaintiff admittedly has no personal knowledge regarding the availability of the blind accessible computer in the law library, and even if he has not been able to use the library equipment, he has clearly been able to prepare pleadings in this case.  Plaintiff filed an opposition to the motion for summary judgment and motion to disqualify defense counsel and alleges that he was able to draft his own motion for summary judgment, though it was ultimately lost.

Finally, plaintiff alleges that he has been denied auxiliary aids, specifically a Comfort Duette, which is a hearing amplifier.  ECF No. 25 at 6-7.  In response, defendant provides evidence that plaintiff was offered the Comfort Duette but refused to accept it unless he was also given the contraband items he ordered, and that he eventually accepted the device on April 23, 2024.  ECF No. 28 at 20-21, 24-25, 61.  Plaintiff also does not identify how the failure to provide the Comfort Duette prevented him from litigating this case.  There have been no hearings at which plaintiff would need to be able to hear, and he was able to hear defense counsel at his deposition without any hearing aids or other auxiliary aids.  DSUF ¶ 3; PL's Depo. 8:7-19 (ECF No. 22-2 at 13).

As set forth above, it does not appear that the various acts that plaintiff alleges were carried out by CDCR staff have prevented him from prosecuting this case.  He alleges only a single incident in which his copies were lost and not returned, and the record shows that he has had adequate access to tools for conducting legal research, he has been able to prepare filings for this case, and his documents related to this case were not destroyed.  With respect to plaintiff's other allegations regarding interference with a call with defense counsel and provision of a hearing amplifier, plaintiff has not demonstrated that either has prevented him from pursuing this case or responding to defendant's motion for summary judgment.  Therefore, to the extent plaintiff is arguing that defendant's motion for summary judgment should be denied because the CDCR has inhibited his ability to pursue this case, his argument fails.

ii.  Legal Property

Plaintiff alleges that upon his arrival at CHCF, his legal materials were confiscated because he was "goin' blind, don't need 'em;" that several boxes of his legal property were later destroyed; and that non-disabled inmates are permitted to keep their legal materials in their cells.

1    ECF No. 1 at 9-10, 14.  These allegations are unsupported by the record.

2            At his deposition, plaintiff testified that he did not actually believe his materials were

3    confiscated because of his disability.  PL's Depo. 46:1-8 (ECF No. 22-2 at 32).  More critically,

4    while the complaint alleged that non-disabled prisoners are permitted to "possess, hold, and use

5    personally owned legal materials in their assigned cells while seizing the disabled plaintiff's legal

6    materials" (ECF No. 1 at 14), plaintiff testified that he was permitted to keep three boxes worth of

7    legal materials in his cell and acknowledged that CDCR regulations limit prisoners to one cubic

8    foot of legal materials in their cells (PL's Depo. 35:22-36:4, 39:6-21 (ECF No. 22-2 at 24-26)).

9    Plaintiff does not provide evidence, or even allege, that non-disabled inmates were exempted

10   from the limitation on in-cell property and instead appears to argue that he was exempt from the

11   regulation due to an old court order (PL's Depo. 36:6-10 (ECF No. 22-2 at 25)).  Violation of a

12   court order does not constitute a per se violation of the ADA or RA.  These laws are violated only

13   when denial or discrimination is because of plaintiff's disability.  Absent evidence of some

14   disparate impact on disabled persons, which plaintiff does not provide, enforcement of a

15   regulation limiting in-cell property that is applied to all inmates regardless of disability status

16   does not violation the ADA or RA.  See K.M. ex rel. Bright v. Tustin Unified Sch. Dist., 725 F.3d

17   1088, 1102 (9th Cir. 2013) ("to challenge a facially neutral government policy on the ground that

18   it has a disparate impact on people with disabilities, the policy must have the effect of denying

19   meaningful access to public services").

20           With respect to the parties' dispute regarding whether plaintiff was able to trade out the

21   materials in his cell for those in storage, assuming the truth of plaintiff's assertions that his

22   requests were denied or ignored, he offers no evidence that his requests were denied or ignored

23   *because of his disability*.  Finally, though plaintiff was required to reduce his legal property by

24   fifty percent, he testified that the directive was applied to all prisoners and was due to the need for

25   storage space at the prison, not his disability, and that the documents he had in storage were no

26   longer needed.  PL's Depo. 40:22-43:3 (ECF No. 22-2 at 27-30).

27           Based on the undisputed evidence, any denial or restriction of plaintiff's access to his

28   legal property was not because of his disability and therefore does not support a claim for relief

17

1    under the ADA or RA.

2                        iii.  <u>Legal Research Materials</u>

3        Plaintiff alleges that he has been denied access to legal research materials through the law

4    library's limitation or denial of his paging and interlibrary loan requests.  ECF No. 1 at 10-12, 14.

5    He further claims that he requires hard copies of cases to enlarge because he is unable to see the

6    LexisNexis screen or hear the text-to-speech conversion.  <u>Id.</u> at 10.

7        The undisputed evidence shows that, contrary to allegations in the unverified complaint,

8    any denial or limitation on plaintiff's access to legal research materials was also due to prison

9    policies that applied to all inmates.  During his deposition, plaintiff testified that during the

10   COVID-19 pandemic the library was closed to all inmates, except inmate workers, regardless of

11   disability status.  PL's Depo. 72:10-20 (ECF No. 22-2 at 45).  Additionally, though plaintiff

12   alleged in the complaint that non-disabled inmates were granted "unfettered" paging services

13   (ECF No. 1 at 14), the evidence shows that the limitation on paging services to two cases per

14   week was applied to all inmates (DSUF ¶ 26).  Beyond the unsubstantiated allegations of the

15   complaint, plaintiff offers no evidence that non-disabled inmates were allowed greater paging

16   services than disabled inmates, and he testified during his deposition that he did not believe the

17   two case per week limitation had anything to do with his disability.  PL's Depo. 80:6-9 (ECF No.

18   22-2 at 50).

19       Plaintiff has similarly failed to come forward with evidence disputing that his interlibrary

20   loan requests were denied due to non-compliance with the regulations or because the forms

21   requested were in the LLEDS computer.  Nor does he show that these criteria were not applied

22   equally to all inmates.  Plaintiff testified during his deposition that except for inmates in

23   lockdown zones, no inmates were allowed to check out the Daily Journal or Daily Appellate

24   Reporter for in-cell use and the denial of his requests did not relate to his disability.  PL's Depo.

25   76:22-77:16 (ECF No. 22-2 at 46-47).

26       Finally, plaintiff alleged that he was denied access to legal research materials because he

27   was directed to use LexisNexis and JAWS text-to-speech, but he required hard copies of cases so

28   that they could be magnified, and he was unable to hear the JAWS text-to-speech because of his

                                                  18

1    hearing loss.  ECF No. 1 at 10, 12.  However, plaintiff's own opposition asserts that he used the

2    LLEDS device in his cellhouse for over four years prior to its malfunction and that it functioned

3    satisfactorily.  ECF No. 25 at 3.  Defendant has further proffered evidence that the LLEDS

4    computers can increase font size up to 400 times (DSUF ¶ 16), which plaintiff does not dispute.

5    Plaintiff also testified at his deposition that he had been provided a series of magnifiers, with up

6    to 30x magnification, though by the time of his deposition they had "started to fail."  PL's Depo.

7    9:9-15 (ECF No. 22-2 at 14).  There is no indication that the magnifiers plaintiff was provided

8    were insufficient to allow him to read non-paper legal materials at the times relevant to the

9    complaint.

10           Plaintiff does not address defendant's assertions that the LLEDS computers with JAWS

11   software and touchscreen LLEDS computers are all equipped with headphone jacks so that

12   headphones can be used to enhance the ability of the users to hear, that plaintiff has been

13   provided with the 20x video magnifier ordered by medical staff, and that additional portable

14   magnifiers that include text-to-speech conversion are available to check out.  In reply to new

15   allegations in plaintiff's opposition, defendant has also submitted evidence that plaintiff now has

16   possession of a Comfort Duette hearing amplifier, which would presumably assist plaintiff in

17   hearing any text-to-speech conversion.  See ECF No. 25 at 7 (stating Comfort Duette amplifies

18   sound up to fifty-nine decibels, compared to a standard hearing aid's two to three decibels).

19           As outlined above, plaintiff has been permitted to possess his legal property in his cell and

20   been provided legal research materials, and any limitations have been due to prison policies that

21   have applied equally to all inmates regardless of disability status.  Although plaintiff alleges that

22   he has not been permitted access to the law library, even if that claim is true, he has proffered no

23   evidence that the denial was because of his disability, and he has had alternate access to research

24   materials through the LLEDS in his cellhouse and through the paging service and interlibrary

25   loan requests.  The record further shows that plaintiff has been provided auxiliary aids for both

26   his vision and hearing impairments which can be used to assist him in reading or hearing text-to-

27   speech conversion.  Based on this undisputed record, plaintiff has not been denied access to his

28   legal property or legal research materials because of his disability.

1          iv. <u>Court Access</u>

2          Plaintiff alleges that he has been denied access to blind accessible computer equipment,

3    which he needs in order to draft court pleadings,[4] even though non-disabled inmates are allowed

4    to use the accessible computers and encouraged to do so.  ECF No. 1 at 12, 14.  He asserts that

5    there are three computers within eighteen feet of his cell that have been unused for seven months.

6    <u>Id.</u> at 12.  He also alleges that he has been denied equipment for drafting court pleadings in

7    braille.  <u>Id.</u> at 13.

8          To the extent plaintiff alleges that the denial of his request for devices to draft court filings

9    in braille was denied, the court does not accept braille filings.  Therefore, a request for braille

10   devices for the purpose of drafting documents to file with the court would not have been

11   reasonable and the denial of the requested accommodation did not deny him access to the courts.

12         As for plaintiff's claim that he has been denied access to the accessible computer and

13   therefore prevented from accessing the courts, he fails to establish that he has been denied access

14   or that any such denial was by reason of his disability.  Although plaintiff alleges that the blind

15   accessible computer in the law library is reserved for non-impaired inmates and never used by

16   vision impaired inmates, these allegations are admittedly not based upon personal knowledge and

17   are instead based upon hearsay statements with no indication that plaintiff would be able to make

18   those statements admissible.  <u>See</u> ECF No. 25 at 6 (stating he has not witnessed computer use

19   personally and information was provided by unidentified inmate worker).  To the extent plaintiff

20   alleges that he has been denied access to these accommodations because he has been denied

21   access to the law library where they are located, he also fails to establish a disputed issue of fact.

22         Plaintiff alleges that outside of March 1, 2024, when he was called to the library regarding

23   his missing copies, he has never been provided a ducat for the law library or to use the equipment

24   _____

25   [4]  In addition to arguing that plaintiff was not denied access to blind accessible computer
     generally, defendant argues that plaintiff was not denied access for the purpose of drafting
26   confidential communication.  ECF No. 22-1 at 19.  However, the complaint alleged denial of the
     right to confidential communications only in the context of plaintiff's ability to read confidential
27   communications.  ECF No. 1 at 13-14.  His allegations regarding access to the blind accessible
     computer were related solely to the drafting of court pleadings, which are not confidential.  <u>Id.</u> at
28   12, 14.

1  in the library.  PL's Depo. 68:1-12, 69:3-4 (ECF No. 22-2 at 42-43); ECF No. 24 at 2; ECF No.

2  25 at 3.  However, defendant has submitted evidence that GLU inmates were allowed to

3  physically access the library, including the blind accessible computer, during the hours scheduled

4  for their housing unit without a ducat and that ducats were only for PLU inmates.  DSUF ¶ 24.

5  While plaintiff affirmed his allegations that three of his requests for PLU status were denied (PL's

6  Depo. 97:10-12, 18-23, 99:16-20 (ECF No. 22-2 at 60, 62), when questioned about whether his

7  requests to use the equipment in the library were ever denied he did not answer affirmatively and

8  instead stated that he was not issued a ducat (PL's Depo. 68:9-12, 69:3-4, 104:13-17 (ECF No.

9  22-2 at 42-43. 67).

10       In his deposition, plaintiff testified that he attempted to go to the library once without a

11  ducat on December 6, 2020, approximately a year after he had transferred to CHCF, but that he

12  was told he was not on the ducat list and would have to leave, after which he was escorted out.

13  PL's Depo. 68:17-21 (ECF No. 42).  Plaintiff has also asserted that his cell house was assigned

14  Thursdays mornings for GLU inmates, Fridays were for PLU inmates,[5] and the library was closed

15  on Sundays.  ECF No. 24 at 2-3.  December 6, 2020, was a Sunday.

16       While the parties dispute whether plaintiff was ever granted PLU status and whether he

17  attended the library or not, plaintiff has not identified evidence supporting a conclusion that any

18  denial of PLU status was due to his disability or that he was ever denied access to the law library

19  as a GLU inmate.  Plaintiff does not allege that his requests to use the equipment in the law

20  library were denied, only that he was not issued a ducat.  Considering defendant's evidence that a

21  ducat is only required for PLU inmates, which plaintiff does not dispute in his opposition, the

22  lack of a ducat is to be expected.  Moreover, plaintiff testified that he has attempted to attend the

23  library only once without a ducat and was denied, but the date he avers he tried to go was a

24  Sunday, a day he claims the library was closed.  There is no evidence or allegation that plaintiff

25  attempted to attend the library and use the equipment as a GLU inmate during the time assigned

26  to his cellhouse and was denied because of his disability or otherwise.

27

28  [5]  The court notes that March 1, 2024, the day for which plaintiff received a ducat, was a Friday.

21

1    To the extent that plaintiff's claim that unused computers in his cellhouse could have been

2    used to allow him to draft court pleadings is an attempt to more broadly claim that he was denied

3    accommodations to allow him access to the courts, these allegations also fail. Defendant has

4    submitted undisputed evidence that it is not feasible to allow inmates to use the staff computers to

5    which plaintiff refers, and that any use of those computers is unauthorized and cause for

6    discipline for any staff member who permits such access. DSUF ¶ 22. The evidence also shows

7    that plaintiff has a typewriter in his cell and has regularly prepared court filings with the

8    assistance of another inmate. DSUF ¶¶ 8-10, 31; PL's Depo. 21:22-23:21, 34:11-13 (ECF No.

9    22-2 at 16-18, 23). Finally, as previously addressed, defendant has submitted evidence that

10    plaintiff is now in possession of the 20x video magnifier that was ordered for him and that

11    additional portable magnifiers with text-to-speech conversion are available for check out. DSUF

12    ¶¶ 6-7. Defendant argues that these devices will assist plaintiff in being able to draft documents

13    in his cell and therefore constitute a reasonable accommodation (ECF No. 22-1 at 21), which

14    plaintiff does not refute.

15    For the reasons set forth above, undisputed evidence shows that plaintiff was not denied

16    access to the blind accessible computer in the law library and has been provided reasonable

17    accommodations that allow him to draft pleadings and access the courts.

18                          v.   Confidential Legal Communications

19    Plaintiff alleges that he has been denied the ability to review confidential legal

20    communications. ECF No. 1 at 13-14. Specifically, plaintiff alleges that due to his disabilities,

21    he is limited to a weekly two-hour library period to read his confidential documents, but he has

22    been denied access to the Merlin magnification and text-to-speech reader in the library and the

23    location of the equipment makes privacy impossible. Id. He alleges that provision of the video

24    magnifier ordered by medical staff would provide the necessary accommodation to allow him to

25    read his confidential documents at any time from the privacy of his cell. Id. at 14.

26    With respect to plaintiff's allegations that he has been denied the ability to communicate

27    confidentially because the Merlin magnification and text-to-speech reader in the library is in an

28    open space where others can easily see and hear any confidential material, he fails to demonstrate

22

1  that he has personal knowledge to support this allegation, since by plaintiff's own admission he

2  has never been to the law library.  PL's Depo. 67:5-6 (ECF No. 22-2 at 41).  He also offers no

3  evidence to dispute defendant's assertion that the Merlin has a headphone jack so that the text-to-

4  speech conversion can be listened to with headphones, providing privacy.  Additionally, while

5  plaintiff argues that the machine can be moved to a private room that is used for storage (ECF No.

6  1 at 13), defendant has identified legitimate reasons why that is not a feasible solution (DSUF

7  ¶ 21).  But even if the court assumes that the location of the Merlin made reading or listening to

8  confidential documents impossible, the record shows that plaintiff had other accommodations

9  available to him that would allow him to review any confidential documents in a private setting,

10  such as his cell.

11      Plaintiff has acknowledged that, like all other inmates, he is permitted to keep up to one

12  cubic foot of legal property in his cell and he had three boxes of legal materials in his cell.  PL's

13  Depo. 35:22-36:4, 39:6-21 (ECF No. 22-2 at 24-26)).  As discussed above in relation to plaintiff's

14  access to legal research materials, plaintiff testified that he was provided various magnifiers, and

15  there is no evidence they were insufficient at the times alleged in the complaint.  See supra

16  Section IV.F.iii; see also PL's Depo. 9:9-15 (ECF No. 22-2 at 14).  Plaintiff also has not disputed

17  that he is now in possession of the video magnifier that was ordered by medical staff and a

18  Comfort Duette hearing amplifier, and that there are portable magnifiers available to borrow that

19  include text-to-speech conversion.  See supra Section IV.F.iii.  The undisputed evidence therefore

20  shows that plaintiff had and has access to accommodations that allow him to review confidential

21  documents at any time in the privacy of his own cell.

22              vi.  Injunctive Relief

23      To the extent that plaintiff experienced a delay in receipt of auxiliary aids, which he

24  claims violated the ADA and RA, this action is for injunctive relief only.[6]  The undisputed

25  _____

26  [6]  Compensatory damages are available under the ADA and RA where the failure to
    accommodate is the result of deliberate indifference.  Lovell v. Chandler, 303 F.3d 1039, 1056

27  (9th Cir. 2002) (citing Duvall v. County of Kitsap, 260 F.3d 1124, 1138 (9th Cir. 2001).
    However, plaintiff's request for damages was made under state law only (ECF No. 1 at 15), and

28  the state law claims were dismissed on screening (ECF Nos. 6-8).

1  evidence shows that the delay in plaintiff's receipt of the Comfort Duette hearing amplifier was

2  caused by plaintiff's own refusal to accept receipt of the device, and in any event it is now in his

3  possession.  ECF No. 28 at 20-21, 24-25, 61.  With respect to the video magnifier, while the over

4  seven-month delay in the provision of the device is concerning, plaintiff is currently in possession

5  of the magnifier under a medical order and has access to additional portable magnifiers that can

6  be borrowed for a twenty-four-hour period.  DSUF ¶¶ 6-7.  Any claim for injunctive relief in the

7  form of provision of these aids is therefore moot.

8              G.    Conclusion

9        For the all reasons set forth above, the court finds that defendant's motion for summary

10 judgment should be granted.

11    V.    Plain Language Summary of this Order for a Pro Se Litigant

12        The undisputed evidence shows that you have not been excluded from or denied access to

13 a service, program, or activity because of your disability.  Any limitations or denials were due to

14 prison policies that applied equally to all inmates regardless of their disability status.  Even

15 assuming that the delay in your receipt of auxiliary aids violated the ADA and RA, since you are

16 now in possession of those aids and you have only requested injunctive relief, the request for

17 injunctive relief in the form of provision of those aids is now moot.

18                        CONCLUSION

19        Accordingly, IT IS HEREBY ORDERED that plaintiff's motion to disqualify the

20 California Attorney General's Office and staff (ECF No. 23) is DENIED.

21        IT IS FURTHER HEREBY RECOMMENDED that defendant's motion for summary

22 judgment (ECF No. 22) be GRANTED and judgment entered for defendant.

23        These findings and recommendations are submitted to the United States District Judge

24 assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days

25 after being served with these findings and recommendations, any party may file written

26 objections with the court and serve a copy on all parties.  Such a document should be captioned

27 "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

28 objections shall be served and filed within fourteen days after service of the objections.  The

                                24

1    parties are advised that failure to file objections within the specified time may waive the right to

2    appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

3    DATED: September 26, 2025

4

5    ALLISON CLAIRE
     UNITED STATES MAGISTRATE JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28